UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Richard M. Picinich,

Plaintiff,

-v.-                                                          5:01-CV-01868
                                                              (NPM)

United Parcel Service, Jim Grover,
Brendan Canavan, Jeffrey Wilson and
United Parcel Service of America, Inc.,

Defendants.

APPEARANCES:                              OF COUNSEL:


FOR THE PLAINTIFF:


Legal Services of Central New York       Susan M. Young
472 South Salina Street
Suite 300
Syracuse, New York 13202


Outten & Golden LLP                      Mark H. Humowiecki
3 Park Avenue, 29th Floor                Cara E. Greene
New York, New York 10016

FOR THE DEFENDANTS:

Day Pitney LLP                           Jonathan M. Borg
7 Times Square                           Adin C. Goldberg, on the brief
New York, New York 10036


Day Pitney LLP                           Theresa D. Egler
P.O. Box 1945

Morristown, New Jersey 07962-1945


Neal P. McCurn, Senior District Judge


## *MEMORANDUM-DECISION AND ORDER*

### *I.      Introduction*

Plaintiff, Richard M. Picinich ("Picinich" or "Plaintiff"), commenced this action against defendants United Parcel Service ("UPS"), Jim Grover ("Grover"), Brendan Canavan ("Canavan"), and Jeffrey Wilson ("Wilson") (collectively, "Defendants"), alleging violations of the Americans with Disabilities Act ("ADA") and New York Human Rights Law ("NYHRL").  Specifically, Picinich claimed that UPS failed to provide him with a reasonable accommodation and discriminatorily discharged him in violation of the ADA and NYHRL.  Picinich also claimed that defendants Grover, Canavan and Wilson discriminated against him because of his disability and failed to provide him with a reasonable accommodation in violation of the NYHRL, as well as aided and abetted violations of the NYHRL.

After hearing oral argument on Defendants' motion for summary judgment dismissing the entire complaint, as well as Plaintiff's motion for partial summary judgment, this court granted Plaintiff's motion, finding that he established as a matter of law the first two elements of his failure to accommodate claim against defendant UPS, which are that he was disabled within the meaning of the ADA

2

and that defendant UPS had notice of same.  Finding questions of fact as to the remaining elements of Plaintiff's failure to accommodate claim, as well as the additional remaining claims, this court denied Defendants' motion for summary judgment.  See Picinich v. United Parcel Service, 321 F.Supp.2d 485 (N.D.N.Y. 2004).

After conducting a bench trial on Plaintiff's claims, this court issued its findings of fact and conclusions of law, ordering judgment in favor of Plaintiff on his failure to accommodate claim against UPS, Grover and Wilson, and judgment in favor of Plaintiff on his discriminatory discharge claim against UPS and Wilson.  Picinich was awarded back pay and compensatory damages, but his request for an order of reinstatement was denied.  This court also denied Picinich's request for front pay after February 2002, finding that he failed to mitigate damages after that date.  See Picinich v. United Parcel Service, No. 01-CV-1868, 2005 WL 3542571 (N.D.N.Y. Dec. 23, 2005) ("Picinich I").

Upon appeal, the Second Circuit Court of Appeals affirmed this court's liability finding as well as its decision declining Picinich's request for an order of reinstatement, but vacated its decision that Picinich failed to mitigate damages and remanded for reconsideration of that issue.  See Picinich v. United Parcel Service, 236 F.App'x 663, 2007 WL 1704948 (2d Cir. June 11, 2007) ("Picinich II").

All parties have submitted supplemental briefs to this court regarding the issue on remand.  Having carefully considered the parties' submissions as well as the factual record and appropriate legal standard, this court now finds that Defendants did not meet their burden to demonstrate that Picinich failed to mitigate his damages.  Accordingly, this court allows, in addition to its original

award to Picinich of back pay from April 2000 through February 2002, an award of back pay from March 2002 until the time of judgment and an award of front pay from the time of judgment until Picinich attains age 65.

## II.    Background

The facts of this case have been set forth in great detail in the two decisions cited above and therefore will not be restated here.  Some discussion of the facts relevant to the issue of mitigation is warranted, however.

Picinich testified at trial regarding his efforts to find alternative employment after learning that UPS had no positions available for which he could perform the essential functions with or without a reasonable accommodation.  According to Picinich, he searched for jobs on the Internet and in the newspaper and networked with friends and family.  See Picinich I, 2005 WL 3542571, at *16.  Picinich further testified that he sought employment by contacting prospective employers via telephone, electronic mail, letter, and in person.  See id.  Copies of several letters and electronic mail messages were submitted by Picinich in support of his testimony, the latest of which was dated December 3, 2001.  See id.  While Picinich had several job interviews, he did not qualify for quite a few of the positions because of his lack of education and physical limitations.  See id.

Picinich also sought assistance from the New York State Office of Vocational and Educational Services for Individuals with Disabilities ("VESID").  See id. at *17.  After undergoing an evaluation, Picinich received a report from VESID, which suggested that he explore the option of owning a small business.  See id.  Picinich testified that he explored the possibility of owning a small business by attending a seminar offered by the Small Business Development

4

Center, attending other meetings and seminars and receiving certifications on the subject as well as meeting with small business owners.  Ultimately, however, Picinich found that a lot of the small businesses he explored required heavy lifting, which exceeded his physical limitations.  The VESID report also suggested that Picinich consider obtaining a degree in business, possibly through the Empire State College.  Marvin S. Reed, a vocational rehabilitation counselor who provided expert testimony at trial on Picinich's behalf, echoed VESID's opinion that Picinich should obtain a college degree.  See id. at *16, 17.  While Picinich met with someone at Empire State College, he did not enroll, nor did he enroll in any college.  See id. at *17.

Picinich did, however, receive his real estate license and obtain a position as an independent contractor with Longley Jones in February 2002.  See id. Nonetheless, due to the level of physical effort required, Picinich testified that he only worked in this position for "several months."  See id.

The court concluded that because "the evidence reflects that Picinich's job search was limited in size and time, and that he failed to heed VESID's advice to further his education[,]" he did not use reasonable diligence in finding alternative employment, and therefore, Defendants were relieved from their burden to prove that no suitable employment existed.  See id. at *28.  The court concluded that Picinich's attempts to mitigate his damages ceased March 2002, after his employment with Longley Jones terminated, therefore eliminating any award of front pay.  See id.

### III.    Discussion

As part of its mandate, the Second Circuit aptly summarized the law

5

governing the mitigation of damages issue in an employment discrimination case as follows:

> 'Generally, an employer seeking to avoid a lost wages award bears the burden of demonstrating that a plaintiff has failed to satisfy the duty to mitigate. This may be done by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it.' Broadnax v. City of New Haven, 415 F.3d 265, 268 (2d Cir.2005) (internal citations and quotation marks omitted). We have recognized an exception to this general rule under which an employer 'is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment.' Id. (quoting Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54 (2d Cir.1998)). The rationale for the 'no reasonable efforts' exception 'is that an employer should not be saddled by a requirement that it show other suitable employment in fact existed ... when the employee, who is capable of finding replacement work, failed to pursue employment at all.' Id. (quoting Greenway, 143 F.3d at 54) (emphasis added). An employer bears the burden of showing that this exception applies. Id. at 268-69.

Picinich II, 236 F.App'x at 665, 2007 WL 1704948, at *1.

The Second Circuit went on to conclude that this court's determination that Picinich failed to mitigate his damages after February 2002 was clearly erroneous, as this court found that Picinich worked for "several months" *beginning in* February 2002. See id. at 665, 2007 WL 1704948, at *2. The Circuit also noted its concern that this court

> may have improperly applied the 'no reasonable efforts' exception to bar Picinich's claims for front pay by: (1) requiring Picinich to establish that he continued attempting to mitigate damages after he ceased working as a realtor, even though defendants were required to establish that Picinich failed to engage in any reasonable efforts to mitigate, see Broadnax, 415 F.3d at 268-69; and (2) concluding that

6

record evidence of Picinich's efforts to find employment in 2001 and 2002, despite his disability, established that the "no reasonable efforts" exception applied in this case.

Id. at 665, 2007 WL 1704948, at *2.

In his supplemental brief, Picinich argues that Defendants did not meet their burden under Greenway to establish that he failed to engage in any reasonable efforts to mitigate his damages and that other suitable work existed. Specifically, Picinich notes that rather than providing any direct evidence regarding mitigation, Defendants erroneously rely on the absence of evidence of his efforts to mitigate after his employment with Longley Jones terminated. Picinich also argues that his failure to further his education is not evidence of his failure to mitigate.

In Defendants' supplemental brief, in addition to their blanket arguments that Picinich failed to mitigate his damages after he stopped working for Longley Jones, and that his failure to pursue an education further supports a finding that he failed to mitigate his damages, Defendants also argue that even if this court determines that Picinich made reasonable efforts to find alternative employment, any award of back pay and front pay should be limited or completely eliminated for a variety of reasons. First, Defendants argue that Picinich should not receive an award for any month that he was deemed totally disabled. Next, Defendants contend that Picinich should receive no back pay or front pay because (1) he failed to accept defendant Wilson's June 2001 offer of employment with UPS; and (2) he would have been terminated for his violations of the UPS Honesty and Integrity Policy had Defendants known about the violations while Picinich was still employed by UPS.

Initially, the court finds that it erroneously found in favor of Defendants on

7

the mitigation issue.  This court previously credited Picinich's testimony as well as other evidence produced by Picinich at trial, which established his attempts to obtain alternative employment.  See Picinich I, 2005 WL 3542571, at *16-17. However, this court erroneously applied the legal standard to (1) conclude that Picinich's failure to heed the advice of VESID to further his education supports a finding of failure to mitigate; and (2) on the same basis, conclude that Picinich's efforts to mitigate were not reasonable, thus releasing Defendants from the obligation to prove that suitable employment existed.  See id. at *28.

    As Picinich now correctly argues, he "did not have an affirmative duty to attend college as a reasonable means of mitigation."  Pl.'s Supp. Brief at 11, Dkt. No. 116.  While some courts have found that removing oneself from the job market in order to attend school constitutes a failure to mitigate such that one would not be eligible for back pay, see Miller v. Marsh, 766 F.2d 490, 491-493 (11th Cir. 1985), and other courts have concluded that pursuit of education after a diligent search for employment does not constitute a failure to mitigate, see Killian v. Yorozu Automotive Tennessee, Inc., 454 F.3d 549, 557 (6th Cir. 2006) (citing, inter alia, Dailey v. Societe Generale, 108 F.3d 451, 456-457 (2d Cir. 1997), no court has found that one must pursue an education in order to properly mitigate one's damages.  Therefore, however ill-advised Picinich's decision to not enroll in college, it is not a proper consideration by this court in deciding whether Defendants have met their burden to show that Picinich failed to make reasonable efforts to mitigate his damages.

    This court also erred in concluding that Picinich's attempts to mitigate damages ceased when he stopped working for Longley Jones in February 2002

8

when it previously found that Picinich began work for Longley Jones in February 2002 and worked in that position for "several months."  See Picinich I, 2005 WL 3542571, at *16, 28.  In fact, the record reflects that Picinich testified to having commenced working as an independent contractor for Longley Jones in February 2002, and that he remained working in that position for "several months" until his physical limitations prevented him from continuing.  See Tr. 106:24-108:9, Dkt. No. 85.  Picinich did not testify regarding when specifically his position with Longley Jones ended, nor did he testify as to whether, or if at all, he ceased looking for alternative employment thereafter.  Notably, counsel for Defendants never elicited such testimony, although it was their burden to prove that Picinich's efforts to look for work were unreasonable.  Accordingly, Defendants failed to meet their burden to prove that Picinich failed to make reasonable efforts to obtain suitable employment.  Therefore, the court erred in relieving Defendants of their burden to establish that suitable employment existed.  The only evidence regarding the existence of suitable employment was proferred by Plaintiff's expert witness, Mr. Reed, and favors the conclusion that no such suitable employment existed for Picinich because of his age, lack of education and physical limitations.  See Tr. 461:8-462:5, Dkt. No. 87.  Accordingly, Defendants have not met their burden of establishing that Picinich failed to mitigate his damages.

Next, the court will address Defendants' arguments that any award of back pay and front pay should be limited or completely eliminated for any month that Picinich was deemed totally disabled and that moreover, Picinich should receive no back pay or front pay because (1) he failed to accept defendant Wilson's June 2001 offer of employment with UPS; and (2) he would have been terminated for

9

his violations of the UPS Honesty and Integrity Policy had Defendants known about the violations while Picinich was still an employee.

The Second Circuit left undisturbed this court's previous conclusion that Picinich is entitled to back pay even for periods of time that he was deemed totally disabled due to the fact that Picinich's disability worsened after Defendants' April 2000 failure to accommodate him.  See Picinich I, 2005 WL 3542571, at *28.  Also,  this court previously addressed an argument from Defendants that Picinich should not be reinstated because his behavior in secretly taping conversations with UPS employees violated the UPS Honesty and Integrity Policy and would have resulted in his termination.  See id. at *27.  In so doing, this court specifically stated that it "declines to conclude that Picinich's behavior would have resulted in his termination[.]" Id.  Accordingly, the aforementioned arguments will not now be considered by the court in order to limit or eliminate an award or back pay or front pay to Picinich.

Regarding the Defendants' argument that Picinich is not entitled to back pay or front pay because he failed to accept defendant Wilson's June 2001 offer of employment, some background discussion is warranted.  On June 1, 2001, during a telephone conversation, Wilson offered Picinich the full time position entitled Dispatch Specialist/Yard Controller.  See Tr. 180:1-16, Dkt. No. 86.  Wilson mailed Picinich a written description of the position, which Picinich requested on or about June 6, 2001.  See Tr. 180:17-22; 749:23-750:18, Dkt. No. 89.  On June 23, 2001, Picinich wrote to Wilson requesting further information regarding the position, and attached a letter from his treating physician which specified the information needed.  See Tr. 757:22-759:4; Defs.' Ex. 69.  On July 11, 2001,

10

Wilson responded to Picinich's request with written descriptions of the position as well as photographs of the work area.  See Tr. 760:19-761:25; Pl.'s Ex. 92.  There is a question of fact as to whether Picinich received the July 11, 2001 letter.  Both Picinich and his wife testified that he never received a response to his June 23, 2001 letter.  See Tr. 133:19-134:12, Dkt. No. 85; Tr. 204:24-206:13.  Attached to the exhibit which includes Wilson's July 11, 2001 letter is a UPS delivery notification which indicates that the letter was delivered to Picinich's front door on July 12, 2001.  See Pl.'s Ex. 92.  Nonetheless, Picinich was deemed totally disabled from work in any position during the period June 26, 2001 through August 28, 2001[1], and therefore could not have accepted Wilson's offer of employment.  See Tr. 393:13-17, Dkt. No. 87.  Accordingly, even if the court were to find that Picinich failed to accept Wilson's offer of employment, same may not serve as evidence in support of a limitation on or elimination of Picinich's back pay or front pay award.

Finally, this court's decision on remand requires an amendment to its initial award of damages.  Because Defendants failed to meet their burden to establish Picinich's failure to mitigate damages, Picinich is entitled to back pay through the time of judgment as well as front pay.[2]

---

[1] This court previously set forth the dates of Picinich's total disability as follows: "January 21, 2000 until April 10, 2000; April 14, 2000 until January 5, 2001; June 26, 2001 until August 28, 2001; March 12, 2002 until April 22, 2002; and February 27, 2002 until March 14, 2003."  Picinich I, 2005 WL 3542571, at *1.  The final period should have in fact read September 27, 2002 until March 14, 2003.  See Tr. 361:7-362:15; 380:18-381:4; 393:13-17; 394:19-396:20.

[2] As this court previously found, "[b]ack pay is typically measured from the date of termination until the date of judgment, and includes lost salary, raises and fringe benefits."  Picinich I, 2005 WL 3542571, at *28 (citing E.E.O.C. v. Yellow Freight System, Inc., No. 98-

> Front pay is awarded in the sound discretion of the district court,
> <u>Saulpaugh v. Monroe Community Hosp.</u>, 4 F.3d 134, 145 (2d
> Cir.1993), <u>cert. denied</u>, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d
> 539 (1994), where reinstatement is inappropriate and the plaintiff has
> been unable to find another job, in order to "mak[e] victims of
> discrimination whole in cases where the factfinder can reasonably
> predict that the plaintiff has no reasonable prospect of obtaining
> comparable alternative employment." <u>Padilla v. Metro-North
> Commuter R.R.</u>, 92 F.3d 117, 125-26 (2d Cir.1996) (<u>quoting
> Whittlesey v. Union Carbide Corp.</u>, 742 F.2d 724, 729 (2d Cir.1984)).

<u>Reed v. A.W. Lawrence & Co., Inc.</u>, 95 F.3d 1170, 1182 (2d Cir. 1996).  Here, this court previously found that reinstatement is inappropriate.  Moreover, Picinich's expert witness, Marvin Reed, testified that Picinich's ability to find employment outside of UPS is severely limited because of his age, lack of education and physical limitations, <u>see</u> Tr. 461:8-462:5, Dkt. No. 87, and that had he not become disabled, Picinich could have worked until age 65 with UPS, <u>see</u> Tr. 470:16-24.  Accordingly, in its discretion the court finds that an award of front pay through the month Picinich attains age 65 is warranted in this case.

This court previously awarded back pay to Picinich from April 2000 through February 2002, offsetting Picinich's wages by his worker's compensation and Social Security disability benefits as well as his long-term and short-term disability benefits.  <u>See</u> <u>Picinich I</u>, 2005 WL 3542571, at *29.  Using that same formula, the court now finds that Picinich is due $215,257.17 in back pay for the period March 2002 through January 2006 as follows:

---

CV-2270, 2002 WL 31011859, at *28 (S.D.N.Y. Sept. 9, 2002).  It is axiomatic, therefore, that as an award of future lost earnings, front pay is awarded beginning at the time of judgment.  <u>See</u> <u>Banks v. Travelers Cos.</u>, 180 F.3d 358, 364 (2d Cir. 1999) (<u>quoting</u> <u>U.S. v. Burke</u>, 504 U.S. 229, 239 n.9, 112 S.Ct. 1867 (1992) (defining "front pay")).

| | |
|---|---|
| Lost salary at $5950 per month | $279,650 |
| Holiday bonuses | $11,900 |
| MIP[3] for 2002 (4.24 x $5950) | $25,228 |
| MIP for 2003 (4.02 x $5950) | $23,919 |
| MIP for 2004 and 2005 (4.87[4] x $5950) | $57,953 |
| Health insurance ($578.33 per month) | $27,181.51 |
| **Subtotal** | **$425,831.51** |
| Worker's compensation ($1733.33 per month) | ($81,466.51) |
| Social Security | |
|     2002 (March through December) | ($18,370) |
|     2003 | ($22,306.20) |
|     January 2004 - January 2006 ($1831 per month) | ($45,775) |
| Long term disability through January 2003 ($3570 per month) | ($39,270) |
| Health insurance through January 2003 ($578.33 per month) | ($6,361.63) |
| **Offset subtotal** | **($213,549.34)** |
| ***Total  Back pay*** | ***$212,282.17*** |

Front pay will be calculated from February 2006 through February 2024[5]

using the same formula as follows[6]:

| | |
|---|---|
| Lost salary at $5950 per month | $1,291,150 |
| Holiday bonuses | $53,550 |
| MIP 2006 through 2023 (4.87 x $5950) | $521,577 |
| Health insurance ($578.33 per month) | $125,497.61 |
| **Subtotal** | **$1,991,774.60** |
| Worker's compensation ($1733.33 per month) | ($376,132.61) |

---

[3] Management Incentive Plan.  See Picinich I, 2005 WL 3542571, at *14.

[4] The MIP factor for 2004 continuing is computed as the average of the MIP factors from 1998 through 2003.  See Pl.'s Ex. 64.

[5] Picinich, born in February 1959, see Tr. 20:16-17, Dkt. No. 85, will attain age 65 in February 2024, and thereafter will become eligible for his UPS pension.

[6] Plaintiff requests that front pay be calculated without cost of living or other increases. As such, there is no need for the court to discount the front pay award to its present value.  See Stratton v. Dep't for the Aging for the City of New York, 132 F.3d 869, 882 (2d Cir. 1997).

| | |
|---|---|
| Social Security | ($397,327) |
| **Offset subtotal** | **($773,459.61)** |
| ***Total Front pay*** | ***$1,218,314.99*** |

In addition, as this court previously held, Picinich is entitled to pension credits. See Picinich I, 2005 WL 3542571, at *29, citing E.E.O.C. v. Yellow Freight System, Inc., No. 98-CV-2270, 2002 WL 31011859, at *31-32 (S.D.N.Y. Sept. 9, 2002) ("Yellow Freight"). Accordingly, the court amends its earlier award to direct defendant UPS to provide Picinich with pension credits as though he was paid his full salary through February 2024.

Further, Picinich is awarded prejudgment interest on the award of compensatory damages as well as the award of back pay and front pay through the time of judgment. The court amends its earlier direction to the Clerk of the Court for computation of said interest as follows: The Clerk of the Court shall compute prejudgment interest according to the following formula. First, the awards shall be divided pro rata for the period April 2000 through January 2006, and the interest compounded annually. Second, prejudgment interest shall be computed based on the United States treasury bill interest rate set forth in 28 U.S.C. § 1961(a). Finally, the interest shall be compounded annually. In addition, Picinich should receive interest for the period between the end of the back pay and compensatory damages period, to wit, January 2006, and the date judgment is entered. "This amount will be calculated based on the average annual Treasury bill rate of interest for the period of [April 2000 through January 2006], will also be compounded annually, and will apply to the subtotal arrived at after adding the compounded interest for the [total award] period to the [total award] principal." Yellow Freight, 2002 WL 31011859, at *33. See also Robinson v. Instructional Systems, Inc., 80

14

F .Supp.2d 203, 208 (S.D.N.Y. 2000).  Moreover, because the court is now awarding front pay, the aforementioned formula should also be utilized to compute prejudgment interest for the award of front pay from February 2006 through the time of amended judgment.

Picinich is also entitled to an award of post-judgment interest in accordance with 28 U.S.C. § 1961(a), as was set forth in this court's previous order.  See Picinich I, 2005 WL 3542571, at *31.

## *IV.    Conclusion*

Upon remand from the Second Circuit Court of Appeals, and after careful review of the Second Circuit's mandate in this case, this court applies the correct legal standard governing mitigation of damages to find that its initial order in this case in relation thereto was in error.  Accordingly, this court now finds that Defendants have not met their burden of establishing that Picinich failed to mitigate his damages.  As such, this court's original award of back pay, front pay, pension credits, prejudgment interest and post-judgment interest is amended as follows:

It is ORDERED that judgment shall include an award to Plaintiff, Richard M. Picinich, of $243,652.58 in back pay, $1,218,314.99 in front pay, and $50,000 in compensatory damages, with prejudgment interest to be calculated by the Clerk of the Court according to the formula set forth above; and it is further

ORDERED that within 45 days of judgment, Defendant, United Parcel Service shall make contributions to Plaintiff, Richard M. Picinich's pension fund that it would have made if Plaintiff had received his full salary as Preload Manager from April 2000 through the time of judgment, and will continue to make

contributions until February 2024, when Plaintiff attains age 65; and it is further

ORDERED that Plaintiff is entitled to an award of post judgment interest to be calculated in accordance with 28 U.S.C. § 1961(a).


IT IS SO ORDERED.

DATED:      April 11, 2008
                 Syracuse, New York


_____
Neal P. McCurn
Senior  U.S. District Judge